STATE OF MINNESOTA *ex rel.* Minnesota Midland Railway
Company *vs.* TOWN OF ROSCOE.

January 23, 1879.

**Municipal Bonds in Aid of Railway.**—Under Sp. Laws 1876, *c.* 55, the vote
of one of the towns mentioned, in favor of granting aid, by issuing
town bonds, in the construction of the Minnesota Midland railway, did
not of itself authorize the delivery of the bonds to the company. An
agreement, as prescribed by section 4 of the act, between the town and
the company, was necessary to entitle the company to a delivery of the
bonds voted.

Mandamus.

*R. B. Galusha* and *Young & Newel,* for relator.

*Lochren, McNair & Gilfillan,* for respondent.

GILFILLAN, C. J. Alternative mandamus to compel the
issuance to the relator of town bonds under Sp. Laws 1876,
*c.* 55. Motion to quash.

Section 1 of the chapter provides that the city of Wabasha
and certain towns, among them the town of Roscoe, may issue
bonds to aid in the construction of the Minnesota Midland
railway, by complying with the provisions of the chapter.
Section 2 provides for an election in any of the towns to vote
on the question of aiding in the construction of such railway.
Section 3, that "if a majority of votes cast at any such elec-
tion be in favor of granting such aid, it shall be the duty of
the corporate authorities of the city or town in which such
election is held to execute the amount of bonds so voted, and
hold the same, to be disposed of" as in the act provided. Sec-
tion 4 is as follows: "The corporate authorities of such cities,
and the board of supervisors of said towns, are hereby author-
ized, and it is hereby made their duty, to enter into agree-
ments in writing with said railway company as soon as their
respective cities or towns have elected to grant aid to such
company for the construction of said railway, wherein and
whereby some disinterested person or persons or corporation

shall be named to hold such bonds in trust or escrow, and wherein also shall be fixed the time, terms and conditions upon which such bonds so held shall be delivered to said railway company; and upon the performance, by said company, of such conditions as may be agreed upon between any such city or town and said company, for the delivery of such bonds, the same shall be delivered to said company or its assigns, and shall thereupon become the property of such company or its assigns; but if said company shall fail in the performance of such conditions, such bonds shall not be delivered: *provided*, that in no case shall any bonds issued under this act be delivered to said company, until said railway is graded, tied, and the rails laid thereon, from Wabasha to a point on said road as far west as the eastern line of the city or town issuing such bonds." At the election in the town of Roscoe, a majority of the vote cast was in favor of granting aid to the extent of ten thousand dollars, in town bonds, in the construction of said railway. The railway company fully constructed and equipped its road, on the line indicated in the statute, from the city of Wabasha to a point further west than the eastern boundary of the town. No bonds of the town were ever executed, and no agreement ever made between the company and the supervisors; but the company, after the election, was ever ready to make it, and duly demanded in writing of the supervisors that they should enter into a contract for the delivery of the bonds in conformity with the terms of the act, and the supervisors refused.

According to the terms of the act, a vote in favor of granting aid did not of itself authorize a delivery of the bonds to the company. The act does not prescribe the terms and conditions upon which they were to be delivered, nor what acts of the company should entitle it to them. The vote was only one of the steps to be taken to authorize their delivery. These steps were three; *first*, the vote in favor of granting aid; *second*, an agreement in writing, fixing the time, terms and conditions upon which the bonds should be delivered; *third*, per-

formance by the company of the conditions so agreed on. The relator contends that, under the proviso to section 4, the company was entitled to the bonds, when the railway was graded, tied, and the rails laid, from Wabasha to a point as far west as the easterly line of the town, unless the supervisors, under the body of the section, succeeded in agreeing with the company upon further terms and conditions. This would be a forced construction of the act, and, to make it, it would be necessary to put the proviso in the place of the body of the section, and make the body of the section perform the office of the proviso. The body of the section gives authority to, and makes it the duty of, the supervisors to enter into an agreement, and prescribes the rights of the parties under it; the proviso contains a limitation or restriction upon the authority so given. It does not define—there is no part of the act which defines—the rights of the parties in case of a neglect by the supervisors of the duty imposed on them, and a refusal by them to enter into an agreement with the company. There is nothing in the allegation that the company fully performed every condition which the town or its supervisors could lawfully or reasonably require to be fixed as a condition of the delivery of the bonds. We cannot determine what conditions would have been reasonable for the supervisors to demand. To do that would be substituting our opinion of what agreement ought to have been made, for the agreement contemplated by the statute, and nothing can be substituted in the place of that agreement. The company has not succeeded in placing itself in position to be entitled to the bonds, and the alternative writ must be quashed.